Filed 11/17/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GARDEN FRESH RESTAURANT CORPORATION,<br><br>     Petitioner,<br><br>     v.<br><br>SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>     Respondent,<br><br>ALICIA MORENO,<br><br>     Real Party in Interest. | D066028<br><br><br>(San Diego County Super. Ct. No. 37-2013-00071988-CU-OE-CTL) |

Petition for writ of mandate from an order of the Superior Court of San Diego

County, Joel R. Wohlfeil, Judge. Petition granted.

Morgan Lewis & Bockius, Dena Harandi and Melinda S. Riechert for Petitioner.

Blumenthal Nordrehaug & Bhowmik, Kyle R. Nordrehaug and Norman B.

Blumenthal for Real Party in Interest.

No appearance for Respondent.

INTRODUCTION

Real party in interest Alicia Moreno sued petitioner Garden Fresh Restaurant Corporation (Garden Fresh), her former employer, for claims related to a variety of alleged Labor Code violations. Moreno filed the action as a putative class action, and also pursued representative relief under the Private Attorney General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

Garden Fresh moved to compel arbitration of Moreno's claims, on an individual basis only, based on two arbitration agreements that Moreno signed during her tenure as an employee of Garden Fresh. Garden Fresh requested that the court dismiss Moreno's class and representative claims, arguing that the parties' arbitration agreements did not contemplate class- or representative-based arbitration. The trial court granted the motion to compel arbitration, but specifically left to the arbitrator to decide the question whether the arbitration agreements between the parties contemplated classwide and/or representative arbitration, thereby denying Garden Fresh's request that only Moreno's individual claims be sent to arbitration.

Garden Fresh filed a petition for a writ of mandate in this court, requesting that this court direct the trial court to vacate that portion of its order leaving to the arbitrator to determine whether the parties' arbitration agreements, which are silent on the issue, contemplated class and/or representative arbitration. Garden Fresh maintains that where an arbitration agreement is silent on the issue whether class and/or representative

arbitration is available, the court, not the arbitrator, should determine whether the arbitration agreement contemplates bilateral arbitration[1] only, or rather, whether their arbitration agreement contemplates that class and/or representative claims may be pursued in arbitration.[2]

We issued an order to show cause, and now grant the petition.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Moreno was employed by Garden Fresh, in California, from June 2006 to June 2013. Moreno signed two arbitration agreements during her employment.

Moreno filed this lawsuit "on behalf of herself and all other similarly situated current and former employees, and on behalf of the State of California pursuant to the

---

[1]     Bilateral arbitration refers to arbitration of a plaintiff's individual claims, as opposed to class and/or representative claims. (See, e.g., *Stolt-Nielsen S.A. v. AnimalFeeds International Corp*. (2010) 559 U.S. 662, 686 (*Stolt-Nielsen*) ["Consider just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration. An arbitrator chosen according to an agreed-upon procedure [citation] no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties"]; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 391 (*Iskanian*) ["Iskanian must proceed with bilateral arbitration on his individual damages claims, and CLS must answer the representative PAGA claims in some forum"].)

[2]     Whether class and/or representative arbitration is available for resolving a plaintiff's claims is based on whether the plaintiff and defendant agreed to arbitrate claims on a class and/or representative basis, *not* on whether class and/or representative arbitration would be beneficial as a matter of public policy. (See *Stolt-Nielsen, supra,* 559 U.S. at p. 684 ["a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so"].)

3

Private Attorney General Act of 2004." In the complaint, Moreno alleged causes of action for unfair and unlawful competition, failure to pay overtime wages, failure to provide accurate itemized wage statements, and failure to provide all wages when due. Moreno also brought a representative claim pursuant to PAGA for penalties for Labor Code violations suffered by Moreno and other "aggrieved employees."

After Moreno filed and served the complaint, counsel for Garden Fresh sent Moreno's attorney a copy of the arbitration agreements that Moreno had signed, and demanded that Moreno arbitrate her claims on an individual basis. Moreno declined to stipulate to binding arbitration of her claims on an individual basis.

A few months after demanding arbitration, Garden Fresh filed a petition in the trial court to compel arbitration. Garden Fresh requested that Moreno's claims be sent to arbitration on an individual basis only, stating, "Garden Fresh respectfully moves this Court for an order compelling arbitration of Plaintiff's individual claims, dismissing her class and representative claims (or, in the alternative, staying her PAGA claim), and staying this judicial proceeding pending the outcome of arbitration."

In response to Garden Fresh's petition to compel bilateral arbitration, Moreno argued that the question whether arbitration should be handled on an individual, as opposed to on a class and/or representative basis, was a matter for the arbitrator, not the trial court, to decide.

The trial court ultimately granted Garden Fresh's petition to compel arbitration, but referred the entire matter to the arbitrator, leaving it to the arbitrator to decide whether the

4

parties' agreements contemplate class and/or representative arbitration. The trial court stated:

> "The Petition is granted to the extent that the entire matter will initially be referred to arbitration. The Petition is denied to the extent that the Court declines to refer only the individual claims to binding arbitration. The arbitrator will make a decision regarding the arbitrability of the representative claims."

Garden Fresh filed a petition for a writ of mandate in this court, seeking a peremptory writ of mandate directing the trial court to vacate that portion of its March 28, 2014 order leaving to the arbitrator to determine whether the parties had agreed to class and/or representative arbitration, and instead, requiring that the court determine, as a gateway matter, whether the parties had agreed to class or representative arbitration. We issued an order to show cause (OSC), and stated that we would deem Moreno's informal response to be a return to the OSC, absent any objection. Moreno has not objected. We now consider the petition.

III.

DISCUSSION

The question that Garden Fresh's petition presents is: who decides whether an agreement to arbitrate disputes between the parties to the agreement authorizes class and/or representative arbitration when the contract is silent on the matter—the arbitrator or the court?

Arbitrators derive their powers from the parties' voluntary submission of disputes for resolution in a nonjudicial forum. Under the Federal Arbitration Act (9 U.S.C. § 1

5

et seq.; FAA), a valid arbitration agreement arises from the parties' consent, and the primary purpose of the FAA is to ensure that agreements to arbitrate are enforced according to their terms. Arbitration agreements are construed to give effect to the parties' contractual rights and expectations. (*Stolt-Nielsen, supra,* 559 U.S. at p. 682.) The parties may agree to limit the issues that they choose to arbitrate, may agree on rules under which an arbitration will proceed, and "may specify with whom they choose to arbitrate their disputes." (*Id.* at p. 683, italics omitted.) Thus, arbitration, as a matter of contract between the parties, is a way to resolve only those disputes that the parties have agreed to submit to arbitration. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938 (*First Options*).)

While federal policy favors arbitration agreements, an arbitrator has the power to decide an issue only if the parties have authorized the arbitrator to do so. Because parties frequently disagree as to whether a particular dispute is arbitrable, courts play a limited threshold role in determining "whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability[.]' " (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 (*Howsam*).)

"Questions of arbitrability" are limited to a narrow range of gateway issues. They may include, for example, "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." (*Howsam*, *supra*, 537 U.S. at p. 84; see also *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444, 452 (plurality opinion) (*Bazzle*).) Courts generally

6

presume that so-called "gateway disputes" are " 'for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " (*Howsam*, *supra*, at p. 83.) These matters are important enough that courts "hesitate to interpret silence or ambiguity" as grounds for giving an arbitrator the power to decide them, because "doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*First Options*, *supra*, 514 U.S. at 945.)

"[T]he law reverses the presumption," with respect to what have been referred to as subsidiary questions. (*First Options, supra*, 514 U.S. at p. 945.) Subsidiary questions "grow out of the dispute and bear on its final disposition." (*John Wiley & Sons, Inc. v. Livingston* (1964) 376 U.S. 543, 557.) Subsidiary issues include, for example, issues related to " 'waiver, delay' " or " 'whether a condition precedent to arbitrability has been fulfilled.' " (*Howsam*, *supra*, 537 U.S. at pp. 84-85.) If the availability of class/representative arbitration is not a "question of arbitrability," then it is presumptively for the arbitrator to resolve. (*First Options, supra*, at pp. 944-945.) This is because once a court decides that the parties have agreed to resolve a particular dispute through arbitration, it follows that they would have agreed to have an arbitrator decide these subsidiary questions, in addition to the particular dispute, absent clear language to the contrary.

In *Bazzle*, *supra*, 539 U.S. at pages 452-453, a plurality of the United States Supreme Court asserted that the availability of class arbitration is not a question of arbitrability because "it concerns neither the validity of the arbitration clause nor its

7

applicability to the underlying dispute between the parties . . . [, but only] contract interpretation and arbitration procedures." (*Ibid*.) Subsequent Supreme Court decisions, however, cast doubt on whether the *Bazzle* plurality's conclusion that the availability of class arbitration is a subsidiary, rather than a gateway, issue, should be accorded any deference. In *Stolt-Nielsen,* a majority of the court specifically noted that "only the plurality" in *Bazzle* had decided that an arbitrator should determine whether a contract permits class arbitration, and emphasized that *Bazzle* is therefore not binding authority on this point. (*Stolt-Nielsen*, *supra*, 559 U.S. at p. 680.) More recently, in *Oxford Health Plans LLC v. Sutter* (2013) __ U.S. __ [133 S.Ct. 2064] (*Oxford Health*), the court was again careful to reiterate that it "has not yet decided whether the availability of class arbitration" is a question for a court or for an arbitrator to resolve. (*Id*. at p. 2068, fn. 2.) The court in *Oxford Health* noted that the case before it presented "no opportunity to [decide whether the availability of class arbitration is a question of arbitrability] because Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures." (*Ibid*.)

The issue that Garden Fresh's petition raises—whether class and/or representative arbitrability is presumptively for an arbitrator to decide, or rather, presumptively for a court to decide—thus remains an open one. Our reading of recent United States Supreme Court precedent persuades us that the availability of class and/or representative arbitration is a question of arbitrability, and is therefore a gateway issue for a court to

8

decide, in the absence of a clear indication that the parties intended otherwise, rather than a subsidiary one for an arbitrator to decide.

The fact that parties have entered into an arbitration agreement does not mean that they have necessarily agreed to arbitrate class and/or representative claims. In *Stolt-Nielsen, supra*¸ 559 U.S. at p. 685, the United States Supreme Court stated, "[I]t cannot be presumed the parties consented to [classwide arbitration] by simply agreeing to submit their disputes to an arbitrator." The Supreme Court explained that a shift from individual to class arbitration is not simply a matter of "what 'procedural mode' [is] available to present [a party's] claims" because that shift fundamentally changes the nature of the arbitration proceeding and significantly expands its scope. (*Id*. at p. 687.) Indeed, the *Stolt-Nielsen* court concluded that class arbitration is not merely a procedural device to which parties may implicitly agree by simply entering into an arbitration agreement, but, rather, that it is a different type of proceeding that requires a showing of consent by the parties. (*Id*. at pp. 685-687.)

As the Supreme Court made clear in *Stolt-Nielsen* and expounded on more recently in *AT&T Mobility LLC v. Concepcion* (2011) __ U.S. __ [131 S.Ct. 1740] (*Concepcion*), the differences between bilateral and classwide arbitration are so significant that they may be classified as "fundamental." (*Stolt-Nielsen, supra, 559* U.S. at p. 686; *Concepcion*, *supra*, at p. 1750.) For example, arbitration's putative benefits— i.e., "lower costs, greater efficiency and speed"—"are much less assured" in classwide arbitration, which, according to the court, "giv[es] reason to doubt the parties' mutual

consent" to a classwide arbitration procedure. (*Stolt-Nielsen, supra*, at p. 685; *Concepcion, supra,* at p. 1751 ["the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment"].) Further, "[c]onfidentiality becomes more difficult" in classwide arbitrations (*Concepcion, supra*, at p. 1750), a complication that "potentially frustrate[s] the parties' assumptions when they agreed to arbitrate." (*Stolt-Nielsen, supra*, at p. 686.)

In addition, "the commercial stakes of class-action arbitration are comparable to those of class-action litigation," while "the scope of judicial review is much more limited[.]" (*Stolt-Nielsen*, *supra*, 559 U.S. at pp. 686-687.) If the significant question of whether the parties to an arbitration agreement agreed to class and/or representative arbitration were to be sent to an arbitrator to decide, the arbitrator's decision would be unreviewable, and if the matter were to proceed to arbitration on a class and/or representative basis, the result of this potentially high stakes proceeding would also be unreviewable. (See *Moncharsh v. Heily & Blase* (1992), 3 Cal.4th 1, 11 ["[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law"]; see also *Concepcion*, *supra*, 131 S.Ct. at p. 1752 ["The absence of multilayered review [from an arbitrator's decision] makes it more likely that errors will go uncorrected"].)

Class arbitration also raises significant due-process concerns, since an arbitrator's award purports to adjudicate the rights of absent parties and bind them, not just the

10

parties to the arbitration agreement. (*Stolt-Nielsen, supra*, 559 U.S. at p. 686.) Absent parties thus "must be afforded notice, an opportunity to be heard, and a right to opt out of the class." (*Concepcion*, *supra*, 131 S.Ct. at p. 1751.) Taking all of this into consideration, "[a]rbitration is poorly suited to the higher stakes of class litigation." (*Id.* at p. 1752.)

We agree with the Sixth Circuit Court of Appeals' assessment that "recently the [United States Supreme] Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one." (*Reed Elsevier, Inc. v. Crockett* (6th Cir. 2013) 734 F.3d 594, 598.) The Supreme Court has made it clear that resolution of this question is "fundamental to the manner in which the parties will resolve their dispute" (*ibid.*), rendering it similar to other gateway questions that are to be determined by a court in the first instance. "Unlike the question whether, say, one party to an arbitration agreement has waived his claim against the other—which of course is a subsidiary question—the question whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally. An incorrect answer in favor of classwide arbitration would 'forc[e] parties to arbitrate' not merely a single 'matter that they may well not have agreed to arbitrate' [citation], but thousands of them." (*Id.* at pp. 598-599.)

For similar reasons, we conclude that a court, not an arbitrator, should also decide whether the parties agreed to arbitrate *representative* claims, such as the PAGA claim in

11

this case, in the face of an arbitration provision that is silent on the matter.[3]  The

*Concepcion* court's reasons for concluding that class arbitration is inconsistent with

---

3        Moreno's PAGA claim is a representative claim, as opposed to a putative class claim.  Although the parties did not distinguish between class and representative claims in their initial briefing, after the parties had completed their briefing in this court, the California Supreme Court issued its opinion in *Iskanian, supra,* 59 Cal.4th 348.  *Iskanian* held that for some purposes class and PAGA representative claims may have to be treated differently.  In *Iskanian*, the Supreme Court determined that, unlike a waiver of class claims, a purported waiver of PAGA representative claims in an arbitration agreement is not enforceable.  (*Iskanian*, *supra*, at p. 391.)

         After the decision in *Iskanian* was filed, we asked the parties to submit supplemental briefing addressing the effect of *Iskanian*, if any, on the issue presented by Garden Fresh's writ petition.  Although each party attempted to demonstrate in its supplemental briefing that *Iskanian* could be read to support its position, neither party argued that *Iskanian* requires this court to differentiate between class and representative claims in answering the question raised by Garden Fresh's petition—i.e., who decides whether class and/or representative claims are arbitrable in the context of an arbitration agreement that is silent on the issue.  The arbitration agreement at issue in this case says nothing at all regarding the availability (or nonavailability) of either class *or* representative arbitration.  *Iskanian* involved the question whether waivers of all class and collective actions in an arbitration agreement may be enforced.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 359-360.)  The court in *Iskanian* was not asked to decide the question of who should determine whether class and/or representative arbitration is available in the context of an arbitration agreement that is silent on the issue.  We therefore conclude that *Iskanian* does not provide any *direct* guidance with respect to the question presented in this writ proceeding.

         However, the opinion in *Iskanian* raises additional questions with respect to PAGA claims brought by an individual who has entered into an arbitration agreement with the defendant, and may provide further indirect support for our conclusion that the question of "who decides" whether arbitration of class and/or representative claims is available is for the court to determine.  Specifically, the *Iskanian* court has expressed that "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship."  (*Iskanian, supra*, 59 Cal.4th at p. 386.)  Rather, "[i]t is a dispute between an employer and the *state*, which alleges directly or through its agents—either the Labor and Workforce Development Agency or aggrieved employees—that the employer has violated the Labor Code."  (*Id*. at pp. 386-387.)  The *Iskanian* court also stated that the FAA "does not aim to promote arbitration of claims belonging to a government agency, and that is no less true when

12

arbitration under the FAA similarly apply to the arbitration of representative actions. The arbitration of representative claims would have many of the same characteristics of class arbitration that the United States Supreme Court determined in *Concepcion* are inconsistent with the FAA. Specifically, like a class claim, a claim brought on a representative basis would make for a slower, more costly process. Although a representative claim would not require all of the same procedural protections as a claim requiring class certification, at a minimum, there would have to be greatly expanded discovery, which could prove costly and time-consuming. In addition, representative claims "increase[] risks to defendants" by essentially aggregating the claims of many individuals into a single action. (*Concepcion*, *supra*, 131 S.Ct. at p. 1752.) As would be the case with class arbitration, defendants would run the risk that an erroneous decision on a claim being made on behalf of a large group of potential individual claimants would "go uncorrected" given the "absence of multilayered review." (*Ibid.*) For the same

_____

such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself." (*Id*. at p. 388.) Based on this language, one might reasonably conclude that a court could never *compel* arbitration of a PAGA claim unless *the state*, as opposed to the individual plaintiff, had entered into an arbitration agreement with the defendant. If, under this scenario, a claim was not subject to arbitration at all because the real parties in interest did not have an arbitration agreement, it would be illogical to refer *to an arbitrator* the question of whether a representative PAGA claim may be arbitrated. Instead, it would appear that a court should decide in the first instance whether the existence of an arbitration agreement between a plaintiff and a defendant has *any* effect on the plaintiff's representative PAGA claim brought on behalf of the state.

In any event, neither party has made the argument that Moreno's PAGA claim is not arbitrable under the authority of *Iskanian*, and Garden Fresh's writ petition does not present that question. We therefore leave it to the trial court to resolve this issue, after full consideration and briefing by the parties.

13

reasons that "[a]rbitration is poorly suited to the higher stakes of class litigation" (*ibid*.), it is reasonable to conclude that arbitration is similarly ill-suited to the higher stakes of a collective or representative action.

Although a class and/or representative action has often been thought of as merely a procedural device, we interpret the United States Supreme Court's analysis regarding the incompatibility of this procedural device with the attributes of arbitration as suggesting that the Supreme Court views the question whether anything other than simple, bilateral arbitration is available where the arbitration agreement between the parties is silent on the matter as being much more than a mere "procedural" question. (See *Concepcion*, *supra*, 131 S.Ct. at p. 1748 ["Requiring the availability of classwide arbitration *interferes with fundamental attributes of arbitration* and thus creates a scheme inconsistent with the FAA" (italics added)].)

We therefore conclude that the question whether an arbitration agreement permits class and/or representative arbitration is a gateway issue, and is thus reserved " 'for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " (*Howsam*, *supra*, 537 U.S. at p. 83.)[4]

---

[4]    At oral argument, both parties conceded that there is no additional evidence to be presented in the trial court with respect to the substantive question whether class and/or representative arbitration is available under the arbitration agreement in this case (i.e., the question that we have now determined is to be answered by the court, not the arbitrator, in this instance). Whether an *express* agreement is necessary for a finding that class arbitration is available under a particular arbitration agreement remains an open question, since the Supreme Court has not held that a class arbitration clause must expressly state that the parties agree to class arbitration in order for a decision maker to conclude that the

parties consented to class arbitration. In fact, in *Stolt-Nielsen* the Supreme Court indicated that it might be appropriate for the decision maker to consider the "sophisticat[ion]" of the parties, and even the "tradition of class arbitration" in the field, when determining whether the parties have consented to class arbitration. (*Stolt-Nielsen*, *supra*, 130 S. Ct. at p. 684.) This suggests that an agreement to class or representative arbitration need not be express. However, our review of the arbitration agreement in this case reveals no express agreement that class and/or representative claims may be arbitrated. Given the parties' statements that there is no additional evidence that would be presented on remand, it is difficult to see how the trial court could find an implicit agreement to permit class and/or representative arbitration.

At oral argument, counsel for Garden Fresh requested that if this court determines that the court, and not the arbitrator, should decide whether the parties' agreement permits arbitration of class or representative claims, then we should proceed to decide the merits of the underlying question ourselves, rather than remand the matter to the trial court for determination. We decline to do so, given that Garden Fresh's request for relief in its writ petition is limited to asking this court to determine whether the court, or instead, the arbitrator, should make that decision. Garden Fresh *did not* request that we decide the merits of the issue. Specifically, Garden Fresh requested that this court "issue a peremptory writ of mandate *directing respondent to* vacate the portion of its March 28, 2014 order requiring the arbitrator to determine whether the parties clearly and unmistakably agreed to class- or representative-wide arbitration, and *enter a new order after determining whether class- or representative-wide arbitration was clearly and unmistakably agreed to . . . .*" (Italics added.) Because the sole relief requested in the writ petition is that this court determine whether the trial court or instead, the arbitrator, should determine whether class or representative arbitration is available under the parties' arbitration agreement, the parties have not adequately addressed the merits of the question in their briefing on appeal. Further, as we noted in footnote 3, *ante*, the decision in *Iskanian*, *supra*, 59 Cal.4th at pages 367-387, raises a question as to whether Moreno's PAGA claim can be sent to arbitration at all. The parties in this writ proceeding have not raised, nor addressed, this question.

We therefore address *only* the "who decides" question. The trial court shall determine, after hearing argument from the parties, whether the parties consented to class and/or representative arbitration. The trial court shall also consider and determine the effect of *Iskanian* on Moreno's PAGA claim.

15

IV.

DISPOSITION

Let a writ of mandate issue directing the trial court (1) to vacate that portion of its March 28, 2014 order leaving it to the arbitrator to determine whether the parties agreed to class and/or representative arbitration; (2) to conduct further proceedings as necessary to determine whether the parties' arbitration agreement contemplates class and/or representative arbitration, and whether the plaintiff's representative PAGA claims may be arbitrated, or rather, whether that claim should be bifurcated; and (3) to enter a new order setting forth the court's determination as to these issues. Garden Fresh shall recover costs.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McINTYRE, J.

16