Filed 3/12/15 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL PROTECTION SERVICE, L.P., | D066919 |
| Petitioner, | (San Diego County Super. Ct. No. 37-2014-00012338-CU- MC-NC) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | ORDER MODIFYING OPINION |
| Respondent, | [NO CHANGE IN JUDGMENT] |
| FLORIDALMA FRANCO, | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on February 27, 2015, be modified as follows:

On page 8, footnote 3 is deleted and replaced with the following so that the footnote now reads:

The question presented here is whether the parties' reference to AAA rules, including rules that expressly state the arbitrator "shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class," constitutes clear and unmistakable evidence that they agreed the arbitrator is to decide that question. Different but related issues are pending before the Supreme Court in *Sandquist v. Lebo Automotive, Inc.*, review granted November 12, 2014, S220812 and *Network Capital Funding Corporation v. Papke*, review granted January 14, 2015, S222638.

**There is no change in the judgment.**

NARES, Acting P. J.

Copies to: All parties

2

Filed 2/27/15 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL PROTECTION SERVICE, L.P., | D066919 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 37-2014-00012338-CU- MC-NC) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent, | |
| FLORIDALMA FRANCO, | |
| Real Party in Interest. | |

Petition for writ of mandate from an order of the Superior Court of San Diego

County, Earl H. Maas III, Judge. Petition denied.

Sheppard, Mullin, Richter & Hampton and Richard J. Simmons, Jason Wade

Kearnaghan, Cassidy M. English, Michael T. Campbell for Petitioner.

The Dion-Kindem Law Firm and Peter R. Kindem, The Blanchard Law Group and

Lonnie C. Blanchard, Jeffrey D. Holmes for Real Party in Interest.

Petitioner Universal Protection Service, L.P. (Universal) petitions for a writ of mandate and/or prohibition challenging the superior court's order granting real party in interest Floridalma Franco's demand to arbitrate her employment-related disputes with Universal and ruling the arbitrator would decide the arbitrability of Franco's class action claims. Universal contends the court legally erred in its ruling because the parties' arbitration agreement did not clearly and unmistakably submit arbitrability questions to the arbitrator, and thus it was for the superior court to decide whether the agreement authorized class and/or representative arbitration.

We conclude the court erred by granting Franco's petition in reliance on *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 (*Bazzle*). Nevertheless, we agree with Franco that the parties' reference to American Arbitration Association (AAA) rules, which unambiguously state that the arbitrator is to decide whether the parties' arbitration agreement permits class arbitration, constitutes clear and unmistakable evidence of their intent that the arbitrator decide this issue, which is a threshold question of arbitrability. Because the trial court reached the correct conclusion, we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Franco, then a Universal employee, signed an arbitration agreement providing that she and Universal agreed subject to some exceptions to arbitrate "any and all disputes or claims" between them, including disputes relating to their employment relationship and its termination, and disputes over wage and hour violations (the arbitration agreement). The arbitration agreement states that the arbitration is to be

2

conducted "in accordance with the National Rules for the Resolution of Employment Disputes set forth by the [AAA]."[1]

In March 2014, Franco on behalf of herself and others similarly situated filed a claim for arbitration with the AAA setting out 11 causes of action based on Universal's alleged violations of the Labor Code and wage orders for not paying its security guards wages for regular and overtime hours, not providing required meal and rest breaks, not reimbursing for employment related expenses, and not providing itemized wage statements. In part, Franco sought to recover civil penalties under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

Universal responded to Franco's demand by filing a declaratory relief action in the San Diego Superior Court. It sought judicial declarations that (1) the court, not an

---

[1] More fully, the relevant provision states: "Subject only to the exceptions set forth below, any and all disputes or claims between Universal . . . ('the Company') and . . . Franco ('Employee'), (collectively referred to as 'the parties') shall be resolved by arbitration before a neutral arbitrator in accordance with the National Rules for the Resolution of Employment Disputes set forth by the [AAA]. This shall include any and all disputes (except as expressly set forth below) related to the employment relationship between the Company and Employee and/or termination of that relationship including, but not limited to, claims for alleged discrimination, harassment, defamation, invasion of privacy, termination or discrimination in alleged violation of public policy, violation of the Fair Employment and Housing Act, violation of Title VII of the Civil Rights Act, whistleblower claims, alleged wage and hour violations, etc. [¶] . . . [¶] The following claims only are not intended to be included in this arbitration provision: (a) Claims subject to the exclusive remedy under the Workers' Compensation Act; (b) unemployment claims; (c) claims subject to exclusive determination under the Employees Retirement Income Security Act (ERISA). [¶] . . . [¶] If an [*sic*] term or provision of this Agreement is determined to be illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable or invalid provision or part thereof shall be stricken from this Agreement, and such provision shall not affect the legality, enforceability or validity of the remainder of this Agreement."

3

arbitrator, decide whether class, collective or other representative arbitration is available under the arbitration agreement and (2) the arbitration agreement required Franco to arbitrate her claims on an individual basis only.

Franco petitioned to compel arbitration. She pointed out that AAA rules and supplementary rules empowered the arbitrator to determine the issues of arbitrability and his or her own jurisdiction, as well as rule on objections as to the scope of the arbitration agreement. Franco maintained that the parties' designation of those rules in the arbitration agreement demonstrated they agreed the arbitrability of Franco's class and PAGA claims was an issue for the arbitrator, precluding the court from deciding those issues. The motion was supported by the declaration of Franco's counsel, who averred in part that based on those rules, the parties "clearly agreed that the issue of the arbitrability of Plaintiff's class claims as well as the arbitrability of the PAGA claims is an issue for the arbitrator to decide."[2]

In opposition, Universal argued Franco had conceded that the superior court was to determine the " 'gateway question' " of whether Franco's claims could proceed on a class and/or representative basis in arbitration. (Italics omitted.) Relying in part on *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, and *Stolt-Nielsen SA v.*

---

[2] Franco's counsel also explained that he had initially brought an action against Universal on Franco's behalf in the Orange County Superior Court because he was unaware that she had signed an arbitration agreement, and that Universal then petitioned to compel arbitration in that action. He dismissed the Orange County action and filed Franco's claim with the AAA, during which Universal took the position that the AAA could not determine the arbitrability of the class and PAGA claims. Universal then filed the present action for declaratory relief.

4

*AnimalFeeds International Corp.* (2010) 559 U.S. 662 (*Stolt-Nielsen*), Universal argued she had not provided evidence the parties had clearly and unmistakably agreed to submit that threshold issue to an arbitrator; that the choice to use AAA rules was not evidence of an agreement to delegate class arbitrability questions to the arbitrator, and courts had rejected such an argument. Universal further argued the parties' arbitration agreement was strictly limited to claims between it and Franco, making no reference to class arbitration, and thus the court could only order the parties to individual arbitration. Finally, Universal argued that under *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, Franco's PAGA claim was not arbitrable.

Following a short hearing on the matter, the court granted Franco's petition to compel arbitration. Citing *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297 (*Garcia*), it ruled that "[t]he arbitrator shall decide the issue of whether the class action claims are arbitrable."

Universal filed this petition for writ of mandate or prohibition seeking an immediate stay and requesting that this court issue an alternative writ directing the superior court to vacate its order, or show cause why it should not be ordered to do so, and on return of that writ issue a peremptory writ of mandate directing the court to enter a new order denying Franco's motion to compel arbitration.

We issued an order to show cause, stayed the trial court's order and the parties' arbitration, and deemed, absent objection, Franco's informal response a return to the petition. We now deny the petition.

5

DISCUSSION

## I. *Standard of Review*

Code of Civil Procedure section 1281.2, governing petitions to compel arbitration, provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement."

"The standard of review of an order compelling arbitration is substantial evidence, where the trial court's decision was based upon the resolution of disputed facts, or de novo where the facts are not in conflict." (*Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1360, citing *Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443.) The trial court here did not resolve factual disputes, but based its decision on what it believed to be controlling U.S. Supreme Court authority. Furthermore, the parties did not present conflicting evidence, but based their arguments strictly on the language of arbitration agreement and the referenced AAA rules, the language of which is not in dispute. Under these circumstances, we determine the correctness of the court's decision, a legal question, de novo. (Accord, *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [appellate court employs de novo standard of review where court's ruling on motion to compel arbitration rests on a decision of law]; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*

6

(2010) 186 Cal.App.4th 696, 707 [de novo standard applies to order on petition to compel arbitration where there is no factual dispute as to the agreement's language or conflicting evidence to aid its interpretation].)

II. *The Superior Court Erred by Granting Franco's Motion to Compel Arbitration In Reliance on* Garcia *and* Bazzle

Here, the superior court granted Franco's motion to compel arbitration based solely on *Garcia*, *supra*, 115 Cal.App.4th 297, which in turn held "[t]he Supreme Court ha[d] spoken" in *Bazzle*, *supra*, 539 U.S. 444 and "quite plainly mandates" that the arbitrator must decide in the first instance whether a particular arbitration agreement prohibits or permits class arbitrations. (*Garcia*, at pp. 298, 302.)

This court and others have declined to rely on *Bazzle* as the conclusive answer to that question. The Supreme Court's decisions in *Stolt-Neilsen*, *supra*, 559 U.S. at p. 680 and *Oxford Health Plans LLC v. Sutter* (2013) ___ U.S. ___ [133 S.Ct. 2064, 2068, fn. 2] point out that *Bazzle* is a nonbinding plurality opinion, casting doubt on whether it should be accorded any deference. (See *Garden Fresh Restaurant Corporation v. Superior Court* (2014) 231 Cal.App.4th 678, 685 (*Garden Fresh*) [U.S. Supreme Court has not yet decided whether availability of class arbitration is a question for the court or for an arbitrator to decide]; *Truly Nolen of American v. Superior Court* (2012) 208 Cal.App.4th 487, 515, fn. 4 [*Bazzle* was a nonbinding plurality decision on the point]; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129, fn. 6.) We conclude that reliance on *Garcia*, *supra*, 115 Cal.App.4th 297 and *Bazzle*, *supra*, 539 U.S. 444 as the basis for granting Franco's petition to compel arbitration was error.

7

This conclusion, however, does not end the inquiry, as we review the correctness of the court's order, not its reasoning. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19; *Town v. Atherton v. California High-Speed Rail Authority* (2014) 228 Cal.App.4th 314, 354.) Here, Universal's action sought judicial declarations as to two matters. The first was that the court declare that it, and not the arbitrator, had the power to decide the availability of class and/or representative arbitration. This court has now squarely held that this particular "who decides" question is a gateway question of arbitrability "for a court to decide, *in the absence of a clear indication that the parties intended otherwise*." (*Garden Fresh*, *supra*, 231 Cal.App.4th at p. 686, italics added.)[3]

In *Garden Fresh*, there was no dispute the parties' arbitration contracts were silent on that particular question. (*Garden Fresh*, *supra*, 231 Cal.App.4th at p. 682.) Where a contract is silent on the question of who primarily is to decide such threshold or gateway questions, "courts determine the parties' intent with the help of presumptions." (*BG Group, PLC v. Republic of Argentina* (2014) ___ U.S. ___ [134 S.Ct. 1198, 1206].) Without a clear indication of the parties' intent that the arbitrator decide questions of

[3]    The California Supreme Court has taken up the question—whether a court or the arbitrator decides if parties to an arbitration agreement agreed to arbitrate class and/or representative claims—in *Sandquist v. Lebo Automotive, Inc.* (2014) 228 Cal.App.4th 65, review granted November 12, 2014, No. S220812, and *Network Capital Funding Corporation v. Papke* (2014) 230 Cal.App.4th 503, review granted January 14, 2015, No. S222638. But neither case involves the question presented here, namely, whether the parties' reference to AAA rules, including rules that expressly state the arbitrator "shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class," constitutes clear and unmistakable evidence that they agreed the arbitrator is to decide that question.

arbitrability, "courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability.' " (*Ibid*; see also *Oxford Health Plans LLC v. Sutter*, *supra*, ___ U.S. ___ [133 S.Ct. 2064, 2068, fn. 2 [gateway questions of arbitrability are "presumptively for courts to decide" absent " 'clear[] and unmistakabl[e]' evidence that the parties wanted an arbitrator to resolve the dispute"]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 (*First Options*); *Garden Fresh*, at pp. 684-685.)

Whether there is clear and unmistakable evidence of the parties' intent is a *heightened* standard of proof. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 784, citing *Rent-A-Center, W., Inc. v. Jackson* (2010) 561 U.S. 63, 70, fn. 1.) Accordingly, "a contract's silence or ambiguity about the arbitrator's power [to decide a threshold question of arbitrability] cannot satisfy the clear and unmistakable evidence standard." (*Ajamian v. CantorCO2e, L.P.*, at p. 782, citing *First Options*, *supra*, 514 U.S. at pp. 943-945.) The reason for this standard is that the issue of who should decide arbitrability "is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. [Citations.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*First Options*, at p. 945.)

9

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts" subject to the "important qualification" that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (*First Options*, *supra*, 514 U.S. at p. 944.) Thus, as to "who decides" arbitrability, the question involved is fundamentally one of the parties' contractual intent, requiring both an analysis of the common understanding or ambiguity of the contractual language and, critically, reasonableness as well as the context in which the key terms appear. (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867; *Mount Vernon Fire Insurance Corporation v. Oxnard Hospitality Enterprise, Inc.* (2013) 219 Cal.App.4th 876, 882.)

III. *The Parties' Consent to AAA Rules Is a Clear and Unmistakable Agreement That the Arbitrator Decides Arbitrability of Class and/or PAGA Claims*

In its writ petition, Universal argues the arbitration agreement "makes no reference to who decides any threshold issues of arbitrability and makes no reference to class or representative arbitration." Universal compares the arbitration agreement's language to that in a case now on review before the California Supreme Court and no longer citable as precedent (see footnote 3, *ante*). Though we agree the arbitration clause in this case—providing the parties agree that "any and all disputes or claims between [Universal] and [Franco] . . . shall be resolved by arbitration"—does not expressly use the phrases class action or representative claims, this does not mean the arbitration agreement is without a clear and unmistakable indication of the parties' intent. (See *Yahoo! Inc. v. Iversen*

10

(N.D.Cal. 2011) 836 F.Supp.2d 1007, 1011, quoting *Stolt-Nielsen*, *supra*, 559 U.S. at pp. 669, 673 & *Vazquez v. ServiceMaster Global Holding Inc.* (N.D.Cal., June 29, 2011, No.09-cv-05148-SI) 2011 WL 2565574, fn 1 [Supreme Court has never held that the parties must explicitly mention that they agree to class arbitration in order for a decisionmaker to conclude the parties consented to class arbitration]; *Parvataneni v. E\*Trade Financial Corporation* (N.D.Cal. 2013) 967 F.Supp.2d 1298, 1303.)

Franco's argument below, which Universal does not address in its writ petition, is that by referring to AAA rules in the arbitration agreement, the parties have clearly and unmistakably agreed that the arbitrator, not the court, should decide whether the parties agreed to class and/or representative arbitration. In her informal response, Franco argues she presented "unmistakabl[e]" evidence the parties agreed the arbitrator would decide the issue because they incorporated the AAA rules, including specific AAA rules for class action arbitrations, into their agreement.

On this record, where the sole evidence of the parties' intent is the arbitration agreement and the relevant AAA rules, which were exhibits to the moving papers below,[4] we conclude Franco's argument has merit. As indicated, the parties' arbitration agreement unambiguously states that disputes "shall be resolved by arbitration before a neutral arbitrator in accordance with the National Rules of the Resolution of Employment

---

4    Franco's counsel attached both the AAA Employment Rules and the Class Arbitration Rules as exhibits to his declaration. Universal had also attached the AAA Employment Rules to its counsel's declaration in the Orange County action. Neither party points out any distinction between the National Rules of the Resolution of Employment Disputes and the AAA Employment Arbitration Rules and Mediation Procedures.

11

Disputes set forth by the [AAA]."  Paragraphs 3 and 6 of the AAA Employment Arbitration Rules and Mediation Procedures (AAA Employment Rules) respectively authorize the AAA to administer the arbitration and prescribe the arbitrator's power: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

But more specifically, an agreement to the AAA's Employment Rules necessarily includes an agreement to the AAA Supplementary Rules for Class Arbitrations (the Class Arbitration Rules).  The Class Arbitration Rules provide, in part:  "These Supplementary Rules for Class Arbitrations . . . shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules.  These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class."  (Class Arbitration Rules, rule 1(a).)

The Class Arbitration Rules expressly state that the arbitrator shall engage in "construction" of the arbitration clause as to whether it permits the arbitration to proceed on behalf of or against a class:  "Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award').  The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of

12

at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award."  (Class Arbitration Rules, rule 3.)  That rule further states:  "In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." (Class Arbitration Rules, rule 3.)

We hold under the circumstances of this case and on this record, that the parties' agreement to arbitrate their disputes under a specifically designated set of rules, which in turn provide that the arbitrator shall decide whether the parties' arbitration agreement permits class and/or representative arbitration, is clear and unmistakable evidence that the parties intended to delegate to the arbitrator that question.  (Accord, *Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1256-1257 [addressing incorporation of a private arbitration service's rules:  "Ordinarily, the parties' agreement to arbitrate in accordance with [rules giving the arbitrator authority to determine jurisdiction and arbitrability issues] 'is clear and unmistakable evidence of the intent that the arbitrator will decide whether a [c]ontested [c]laim is arbitrable' "]; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1442; see also *Yahoo! Inc. v. Iversen*, *supra*, 836 F.Supp.2d at p. 1012 [incorporation by reference of the AAA Supplementary Rules as they existed at the time Yahoo! Inc. and Iversen entered into their contract constitutes a "clear[] and unmistakabl[e]" agreement to have the arbitrator decide questions regarding the arbitrability of classwide claims].)  This conclusion upholds the federal policy served by the FAA, which is " 'at bottom a policy guaranteeing the enforcement of private

contractual arrangements.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1353, quoting *Mitsubishi Motors v. Soler Chrysler–Plymouth* (1985) 473 U.S. 614, 625 & *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 58.) " '[T]he basic objective in this area is . . . to ensure that commercial arbitration agreements, like other contracts, " 'are enforced according to their terms,' " [citations], and according to the intentions of the parties.' " (*Cable Connection*, at p. 1353, quoting *First Options*, *supra*, 514 U.S. at p. 947; see also *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740, 1745-1746] ["courts must place arbitration agreements on an equal footing with other contracts [citation] and enforce them according to their terms"]; *Garden Fresh*, *supra*, 231 Cal.App.4th at p. 684.)

This conclusion is also consistent with general contract principles. "A contract may validly include the provisions of a document not physically part of the basic contract. . . . 'It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. [Citations.] But each case must turn on its facts. [Citation.] For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.' " (*Williams Constr. Co. v. Standard–Pacific Corp.* (1967) 254 Cal.App.2d 442, 454; see *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 66; *Baker v. Osborne Development Corporation* (2008) 159 Cal.App.4th 884, 895; *King v. Larson Realty, Inc.* (1981) 121 Cal.App.3d 349, 353-357 [court held

14

incorporated realtor association bylaws, which required members to arbitrate disputes and arbitration manual, reflected parties' agreement to arbitrate disputes as set forth in the arbitration manual].)  Franco has not argued, nor can Universal as the drafter of the arbitration agreement, that the content of the referenced AAA rules were unknown or not readily available at the time Universal and Franco contracted.

We recognize there are conflicting California authorities on this question in differing contexts.  This court's decision in *Hartley v. Superior Court*, *supra*, 196 Cal.App.4th 1249, involved a purchase agreement's provision that arbitration would be conducted in accordance with certain private judicial arbitration and mediation rules, which stated the arbitrator had authority to determine jurisdiction and arbitrability issues as a preliminary matter.  (*Id.* at p. 1257.)  Citing *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 557 (*Dream Theater*), we acknowledged the general rule that an agreement to arbitrate in accordance with such a rule constitutes clear and unmistakable evidence of the parties' intent that the arbitrator will decide the arbitrability of a contested claim.  (*Hartley v. Superior Court*, at pp. 1256-1257.)  In that case, however, the parties' purchase agreement contained additional ambiguities; we concluded it was not clear and unmistakable because elsewhere it referred to a "trier of fact of competent jurisdiction" and not an "arbitrator," and thus it did not meet the "heightened standard" to vary from the general rule that the court would decide such gateway issues. (*Id.* at pp. 1257-1258.)  In *Greenspan v. LADT, LLC*, *supra*, 185 Cal.App.4th 1413, the Court of Appeal held that " 'when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and

15

unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.' " (*Id.* at p. 1442; see also *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1193 [observing that California cases hold that incorporation of AAA rules by reference was "sufficient to 'clearly and unmistakably' provide that arbitrators would have jurisdiction to decide their own jurisdiction," and finding those cases to "represent the outer limits" of incorporation by reference but declining to apply it in that case where the AAA rule was not in existence at the time of contracting]; *Dream Theater*, *supra*, 124 Cal.App.4th at pp. 550, 557 [parties agreed to conduct arbitration in accordance with AAA commercial rules, which provided the arbitrator would have power to rule on his own jurisdiction, including objections as to the scope of the agreement; "It is difficult to imagine how parties could state any more comprehensively . . . the intent to avoid litigation at every step of the dispute resolution process. . . . [The AAA commercial rules] specify that the arbitrator will decide disputes over the scope of the arbitration agreement. We conclude that the parties' agreement to arbitrate according to this rule is clear and unmistakable evidence of the intent that the arbitrator will decide whether a Contested Claim is arbitrable."].)

On the other hand, in *Ajamian v. CantorCO2e, L.P.*, *supra*, 203 Cal.App.4th 771, the Court of Appeal "seriously question[ed]" whether the incorporation of AAA rules into an agreement provided clear and unmistakable evidence that an employer and employee intended to submit the issue of unconscionability of an arbitration provision to the arbitrator. (*Ajamian*, at p. 790.) But the observation was dicta; the *Ajamian* court expressly did not decide that question because there was a different reason in that case to

16

conclude the parties had not so intended: the employment agreement at issue "did not mandate that AAA rules would *necessarily* apply. Instead, the arbitration clause stated that the arbitration would be held according to [the National Association of Securities Dealers] rules, AAA rules, *or* the rules of 'any other alternative dispute resolution organization' selected by [defendant] in its sole discretion." (*Ajamian*, at p. 791.) Furthermore, in that case, other provisions in the employment agreement suggested that the *court* (as opposed to the arbitrator) might find contractual provisions unenforceable, creating additional ambiguity. (*Id*. at pp. 791-792.) Because the parties' arbitration agreement in this case does not have these flaws, *Ajamian* is inapposite.

There is conflicting federal authority on the issue as well. In *Reed Elsevier, Inc. v. Crockett* (6th Cir. 2013) 734 F.3d 594, the federal Sixth Circuit Court of Appeals held that language of an arbitration clause providing for resolution under AAA commercial rules did not clearly and unmistakably assign to an arbitrator the question of whether the agreement permitted classwide arbitration. (*Id*. at p. 599.) The court focused on the fact that the agreement "does not mention classwide arbitration at all," holding it was, at best, silent or ambiguous on the issue, which was not enough to overcome the presumption that the issue should be decided by the court. (*Id*.) The court then proceeded to answer a *different* question from the "who decides" question—whether the parties' arbitration clause indeed authorized classwide arbitration—and held it did not, because the clause limited arbitration to claims "arising from or in connection with *this Order*" as opposed to other customer orders. (*Ibid*.) It rejected the customer's argument that incorporation of the AAA Supplemental Rules for Class Arbitration demonstrated otherwise, pointing out

17

that they state "one should 'not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.' " (*Id*. at pp. 599-600.) But this point is different from the "who decides" question. In any event, we disagree with *Reed Elsevier*'s suggestion that the parties must expressly use the words "class arbitration" in their agreement in order to express an intent that an arbitrator (versus the court) decide whether the agreement permits it.[5]

---

5 The weight of federal authority supports our holding. "California courts often look to federal law when deciding arbitration issues under state law." (*Dream Theater*, *supra*, 124 Cal.App.4th at p. 553.) The Ninth Circuit has observed that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (*Oracle America, Inc. v. Myriad Group A.G.* (9th Cir. 2013) 724 F.3d 1069, 1074 [but limiting its own holding pertaining to incorporation of UNCITRAL rules to arbitration agreements "between sophisticated parties to commercial contracts"], citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.* (5th Cir. 2012) 687 F.3d 671, 675 ["[T]he express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."]; *Fallo v. High–Tech Inst.* (8th Cir. 2009) 559 F.3d 874, 878 [AAA commercial rule 7(a) gave the arbitrator the power to determine arbitrability]; *Qualcomm Inc. v. Nokia Corp.* (Fed.Cir. 2006) 466 F.3d 1366, 1373; *Terminix Int'l Co. v. Palmer Ranch LP* (11th Cir. 2005) 432 F.3d 1327, 1332; *Contec Corp. v. Remote Solution Co., Ltd.* (2d Cir. 2005) 398 F.3d 205, 208; see also *In re: Cathode Ray Tube (CRT) Antitrust Litigation* (N.D.Cal., Dec. 18, 2014, Nos. C-07-5944-S.C., 3:14-cv-02510) 2014 WL 7206620 [pointing to "substantial weight of authority finding that incorporating AAA or other arbitration rules constitutes 'clear and unmistakable' evidence of intent to resolve arbitrability before the arbitral panel"]; *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.* (2d Cir. 2010) 592 F.3d 329, 345 [when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"]; but see *Tompkins v. 23andMe, Inc.* (N.D.Cal., June 25, 2014, Nos. 5:13-CV-05682-LHK, 5:14-CV-00294-LHK, 5:14-CV-00429-LHK, 5:14-CV-01167-LHK, 5:14-CV-01191-LHK, 5:14-CV-01258-LHK, 5:14-CV-01348-LHK, 5:14-CV-01455-LHK) 2014 WL 2903752) [declining to hold that unspecific reference to AAA rules indicated the parties' intent because there were

18

In sum, Franco and Universal's agreement to resolve their arbitration under the AAA rules constitutes clear and unmistakable evidence of their intent that the arbitrator, not the court, interpret the arbitration agreement and decide whether it permits arbitration of class and/or representative claims. Accordingly, we deny Universal's petition.

DISPOSITION

The petition is denied. The stay issued on November 10, 2014, is vacated. Floridalma Franco shall recover her costs.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.

---

"multiple layers of ambiguity" about which AAA rules governed, and uncertainty as to whether consumer rules applied in addition to the commercial rules].) District courts have held that " 'consent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules [for Class Arbitrations] and, if a dispute that otherwise would be arbitrated under the AAA rules involves a purported class, then the proceeding is governed by both the AAA rules and the AAA Supplementary Rules for Class Arbitrations.' " (*Marriott Ownership Resorts, Inc. v. Flynn* (D.Hawaii, Dec. 11, 2014, Civ. No. 14-00372) 2014 WL 7076827 [citing cases]; see also *Chesapeake Appalacia, LLC v. Burkett* (M.D.Pa., Oct. 17, 2014, Civ. A. No. 3:13-3073) 2014 WL 5312829.)