Filed 5/10/16  Tarantino v. Cintas Corp. No. 3 CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CHRISTOPHER TARANTINO, | C077441 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2013-00153412-CU-OE-GDS) |
| v. | |
| CINTAS CORPORATION NO. 3, | |
| Defendant and Appellant. | |

Plaintiff Christopher Tarantino brought suit against his former employer Cintas Corporation No. 3 (Cintas), asserting a representative claim pursuant to the Labor Code Private Attorney General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) for failure to provide accurate wage statements and to maintain records of hours worked.  Cintas moved to stay the litigation and to compel individual arbitration, based on the arbitration clause in Tarantino's employment agreement.  The trial court denied the motion under the authority of *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which held a pre-dispute waiver of the employee's right to bring a representative PAGA

1

action violated public policy. This order is appealable under Code of Civil Procedure section 1294, subdivision (a).

On appeal, Cintas contends: (1) *Iskanian* does not apply because the employment agreement is governed by Ohio law; (2) even if California law applies, Tarantino validly waived his right to bring a representative action under the PAGA after the dispute arose; (3) the rule announced in *Iskanian* is preempted by the Federal Arbitration Act (FAA); and (4) the trial court's ruling is contrary to California law.

As we explain, we reject all of Cintas's contentions and affirm. The trial court properly applied California law because under choice of law principles the rule set forth in *Iskanian* is a fundamental policy and California has a materially greater interest than Ohio. Cintas has failed to show that Tarantino validly waived his right to bring a representative PAGA suit after the dispute arose. We are bound by our Supreme Court's decision in *Iskanian* which found no preemption by the FAA. Finally, the trial court's ruling complies with California law.

### BACKGROUND

*Tarantino's Complaint*

Cintas is headquartered in Ohio and operates a nationwide business that manufactures, sells, and rents uniforms and apparel. From June 29, 2009, until October 30, 2012, Tarantino worked for Cintas as a uniform sales service representative in California. He worked as an hourly employee.

On October 22, 2013, Tarantino filed suit against Cintas. Tarantino alleged that Cintas failed to provide accurate wage statements in violation of Labor Code section 226 and failed to maintain records of the hours worked by hourly workers in California. Tarantino brought the action in his individual capacity and on behalf of all aggrieved employees of Cintas pursuant to the PAGA.

The complaint sought statutory penalties, attorney fees, costs, and interest.

2

*Cintas's Motion to Stay and Compel Arbitration*

Cintas moved to stay the action and compel arbitration. Cintas asserted that during his employment, Tarantino agreed to arbitration as the exclusive method to resolve his dispute with Cintas. On July 19, 2010, over a year after his employment began, Tarantino signed an employment agreement in exchange for a pay raise. The employment agreement contained an arbitration clause. The agreement provided in part as follows:

8. EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES.

Should any dispute or difference arise between Employee and Employer concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this Agreement, the parties will confer and attempt in good faith to resolve promptly such dispute or difference. The rights and claims of Employer covered by this Section 8, including the arbitration provisions below, include Employer's claims for damages, as well as reasonable costs and attorneys' fees, caused by Employee's violation of any provision of this Agreement or any law, regulation or public policy. The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, include Employee's rights or claims for damages as well as reasonable costs and attorneys' fees, caused by Employer's violation of any provision of this Agreement or any law, regulation or public policy. The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under . . . state or local laws regarding employment . . . .

If any dispute or difference remains unresolved after the parties have conferred in good faith, either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration. The place of arbitration shall be in the county and state where Employee currently works for Employer or most recently worked for Employer. . . . Arbitration under this Agreement will be conducted in accordance with the AAA's National Rules for Resolution of Employment Disputes, except if such AAA rules are contrary to applicable state or federal law, applicable law shall govern.

The employment agreement further provided that it was governed by the law of the State of Ohio.

3

Cintas argued Tarantino was entitled to *individual* arbitration on his claims of labor law violations. Cintas denied that Tarantino could bring such claims in a representative capacity.

Cintas requested judicial notice of two unpublished federal district court cases upholding the validity of this arbitration agreement against the claim it was unconscionable.

In opposition, Tarantino argued California law applied and PAGA claims were not subject to arbitration. Tarantino provided a declaration in which he stated that he did not negotiate the employment agreement; it was provided on a take-it-or-leave-it basis. He understood he had to sign the agreement or end his employment. He did not expect to lose his right to bring a PAGA claim.

The California Supreme Court issued its decision in *Iskanian* and the trial court requested additional briefing. The court directed the parties to explain whether *Iskanian* had any impact on the choice of law issue, specifically, whether Ohio law was contrary to the fundamental policy of California law, in light of *Iskanian*.

*Trial Court's Ruling and Order*

The trial court denied Cintas's motion to stay and petition to compel arbitration. Applying a choice of law analysis, the court found the public policy articulated in *Iskanian* was a fundamental policy and California had a materially greater interest, so California law applied. Under *Iskanian,* the arbitration clause was unenforceable as to a PAGA claim, so there was no basis to compel arbitration.

**DISCUSSION**

I

*PAGA Actions and* Iskanian

As *Iskanian* explains, the PAGA was enacted to address two problems. First, there was no enforcement of many Labor Code violations because the only penalty was a criminal misdemeanor sanction and district attorneys directed their resources to violent

4

crimes and other priorities. (*Iskanian, supra,* 59 Cal.4th at p. 379.) The PAGA provides civil penalties for Labor Code violations for which there was no such penalty. Generally, the penalty is $100 for each aggrieved employee during the initial pay period and $200 per violation thereafter. (Lab. Code, § 2699, subd. (f)(2).)

The second problem the PAGA addressed was the shortage of government resources to enforce labor law violations. The solution was to permit an aggrieved employee to bring an action personally and on behalf of other current or former employees to recover civil penalties. (*Iskanian, supra,* 59 Cal.4th at pp. 379-380.) Labor Code section 2699, subdivision (a) provides: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." Of the penalties recovered, 75 percent are distributed to the Labor and Workforce Development Agency for enforcement and education; the remaining 25 percent is distributed to aggrieved employees. (Lab. Code, § 2699, subd. (i).)

"An employee plaintiff suing, as here, under the [PAGA], does so as the proxy or agent of the state's labor law enforcement agencies. The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves. [Citation.] In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency. [Citation.]" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.) "Because an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the

5

government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." (*Ibid*.)

"A PAGA representative action is therefore a type of qui tam action.[1] 'Traditionally, the requirements for enforcement by a citizen in a *qui tam* action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty.' [Citation.] The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation. The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit. [Citation.]" (*Iskanian, supra,* 59 Cal.4th at p. 382.)

In *Iskanian,* the plaintiff employee had signed an arbitration agreement with defendant employer providing that " 'any and all claims' " arising out of employment were to be submitted to arbitration. (*Iskanian, supra,* 59 Cal.4th at p. 360.) The arbitration agreement also contained an express waiver of any class or representative claims. (*Ibid*.) It was undisputed that the waiver applied to plaintiff's representative PAGA action. (*Id*. at p. 378.) One of the issues presented was whether such waivers were permissible under state law. (*Ibid.*)

---

[1] "A qui tam action has been defined as follows, 'An action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.' [Citations.] The term 'qui tam' comes from the Latin expression 'qui tam pro domino rege quam pro se ipso in hac parte sequitur,' which means, 'who pursues this action on our Lord the King's behalf as well as his own.' [Citations.]" (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 538.)

Our high court held that an employee's right to bring a PAGA action is not waivable. (*Iskanian, supra,* 59 Cal.4th at p. 382.) This conclusion was compelled by two statutes. First, Civil Code section 1668 prohibits contracts to exempt an individual from responsibility for his or her violation of law. "[T]he Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the [Labor and Workforce Development] Agency by empowering employees to enforce the Labor Code as representatives of the Agency. Thus, an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code. Because such an agreement has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own ... violation of law,' it is against public policy and may not be enforced. (Civ. Code, § 1668.)" (*Iskanian,* at p. 383.) Second, Civil Code section 3513 provides that a private agreement may not contravene a law established for a public reason. "The PAGA was clearly established for a public reason, and agreements requiring the waiver of PAGA rights would harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations." (*Iskanian,* at p. 383.)

The court rejected the argument that the arbitration agreement prohibited only representative PAGA claims, but not individual PAGA claims, without deciding whether a PAGA claim could be brought *only* individually. "[W]hether or not an individual claim is permissible under the PAGA, a prohibition of *representative* claims frustrates the PAGA's objectives. As one Court of Appeal has observed: '[A]ssuming it is authorized, a single-claimant arbitration under the PAGA for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code. That plaintiff and other employees might be able to bring individual claims for Labor Code violations in separate arbitrations does not serve the purpose of the PAGA, even if an individual claim has

7

collateral estoppel effects. [Citation.] Other employees would still have to assert their claims in individual proceedings.' [Citation.]" (*Iskanian, supra,* 59 Cal.4th at p. 384.)

The court held an employment agreement that compels the waiver of representative claims under the PAGA "is contrary to public policy and unenforceable as a matter of state law." (*Iskanian, supra,* 59 Cal.4th at p. 384.) The court did not, however, preclude *all* waivers of the right to bring a representative PAGA claim. "Of course, employees are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations." (*Id.* at pp. 383, 387 ["Of course, any employee is free to forgo the option of pursuing a PAGA action."].)

Next, the *Iskanian* court considered whether the FAA preempted the rule against PAGA waivers. "We conclude that the rule against PAGA waivers does not frustrate the FAA's objectives because, as explained below, the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state [Labor and Workforce Development] Agency." (*Iskanian, supra,* 59 Cal.4th at p. 384.) "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code."[2] (*Id.* at pp. 386-387.)

---

[2] The concurring opinion disagreed with this reasoning. Instead, it found the arbitration agreement unenforceable "because it purports to preclude Iskanian from bringing a PAGA action *in any forum*." (*Iskanian, supra, 59* Cal.4th at p. 396 (concur. opn. of Chin, J.).) The arbitration agreement at issue provided: "EMPLOYEE and COMPANY agree that each will not assert class action or *representative* action claims against the other *in arbitration or otherwise*." (*Id.* at p. 394.)

II

*Waiver of the Representative PAGA Claims*

Initially, we note that unlike the arbitration agreement at issue in *Iskanian*, the arbitration provision here *does not* contain an express waiver of the right to bring a representative claim. Although not recognized in the briefing, both parties acknowledge this point at oral argument. Nonetheless, the parties treat the arbitration agreement as having such effect, although they fail to articulate exactly how they reach that conclusion.[3]

The parties agree the arbitration provision does not provide for arbitration of representative claims as it does not address that subject and thus does not indicate an intent to submit such claims to arbitration.[4] (See *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684 [176 L.Ed.2d 605] [" a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so"].) "[C]onsent to class arbitration cannot be inferred solely from the agreement to arbitrate, and the decision cannot be based on the court's view of sound policy regarding class arbitration but must be discernible in the contract itself." (*Nelsen v. Legacy Partners Residential, Inc*. (2012) 207 Cal.App.4th 1115, 1128, citing *Stolt-Nielsen;* but see *Garden Fresh Restaurant Corp. v. Superior Court* (2014) 231 Cal.App.4th 678, 689 (*Garden Fresh*) [the question of whether a silent

---

[3] Although Cintas does argue that the trial court incorrectly expanded *Iskanian* by reading the case to hold that PAGA claims can never be arbitrated, he argues only that such an expansion is preempted by the FAA. He does not argue that the trial court incorrectly applied *Iskanian* per se.

[4] Although the arbitration clause provides that arbitration will be conducted under the AAA rules, neither party relies on those rules in addressing the arbitration of representative claims. The only portion of the AAA rules in the record does not address representative claims.

9

arbitration agreement permits arbitration of a representative claim is to be decided by the court, not the arbitrator].)

Tarantino argues he cannot be compelled to arbitrate the PAGA claim, either because *Iskanian* prohibits arbitration of such claims or because such representative claims, being in effect between the State and the employer, are outside the scope of the arbitration clause.

At times, *Iskanian* does suggest that a PAGA claim is not subject to arbitration. For example, the court says, "a PAGA claim lies outside the FAA's coverage." (*Iskanian, supra,* 59 Cal.4th at p. 386.) Also, "[n]othing in the text or legislative history of the FAA . . . suggests the FAA was intended to limit the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tam actions." (*Id.* at p. 387.) The concurring opinion apparently reads the majority opinion to preclude arbitration of PAGA claims and takes issue with "the majority's view that the FAA permits either California or its courts to declare private agreements to arbitrate PAGA claims categorically unenforceable." (*Id.* at p. 396 (conc. opn. of Chin, J.).) Other language in *Iskanian*, however, suggests a representative PAGA claim can be subject to arbitration. In remanding the case, the court stated the defendant "must answer the representative PAGA claims in some forum. The arbitration agreement gives us no basis to assume that the parties would prefer to resolve a representative PAGA claim through arbitration." (*Id.* at p. 391.) Given the absence of a clear directive, we do not read *Iskanian* to *hold* that representative PAGA claims can never be subject to arbitration. However, as the court noted in *Garden Fresh, supra,* 231 Cal.App.4th at page 689, footnote 4, *Iskanian* raises a question as to whether a PAGA claim can be sent to arbitration at all. In our view, whether a representative PAGA claim may be subject to mandatory arbitration remains an open question in California. Here the parties agree *this* arbitration agreement does not so provide and Cintas did not seek to compel arbitration of

10

the representative claim. Therefore, this case does not present the question of whether a plaintiff may be compelled to arbitrate a representative PAGA claim.

Tarantino's argument is thus reduced; he cannot be compelled to arbitrate his individual PAGA claim because his individual claim is not divisible from the representative claim. In *Reyes v. Macy's, Inc*. (2011) 202 Cal.App.4th 1119, plaintiff sued her employer for various labor law violations and included a PAGA claim. The employer moved to compel arbitration of the individual claims and dismiss the class and representative claims. (*Id.* at p. 1121.) The court found the PAGA claim was not an individual claim, because the statute required that it be brought as a representative claim, and therefore the PAGA claim was not within the employer's request to arbitrate individual claims. (*Id.* at pp. 1123-1124.) In *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, at page 649, the court found no legal authority to split the PAGA claim into an arbitrable individual claim and a nonarbitrable representative claim. "Because ' "every PAGA action,' " whether seeking penalties as to only one aggrieved employee or as to other employees as well, ' "is a representative action on behalf of the state" ' [citing *Iskanian*], [the employee's] individual PAGA claims are no more subject to his [arbitration] agreement than are his representative claims." (*Franco v. Arakelian Enterprises, Inc*. (2015) 234 Cal.App.4th 947, 965, fn. 11.)

Cintas, on the other hand, contends that Tarantino can be compelled to arbitrate his individual PAGA claim because the employment agreement--including the arbitration clause--is governed by Ohio law, as set forth in the choice of law provision, and therefore *Iskanian* and other California cases do not apply. The argument assumes that application of Ohio law would permit and result in the waiver--or at least the bifurcation--of the representative PAGA claims. Cintas's argument is muddled because it fails to state exactly how the case would be resolved under Ohio law. Indeed, in its opening brief, Cintas fails to cite to *any* Ohio law, either statute or decision. Instead, it relies on unpublished federal district court cases that have enforced the identical or similar

11

arbitration clauses, even when PAGA claims are asserted. (See, e.g., *Castro v. Cintas Corporation No. 3* (N.D.Cal. Apr. 11, 2014) 2014 U.S. Dist. Lexis 50695.)

In its reply brief, Cintas cites to *Hawkins v. O'Brien* (Ohio Ct. App. Jan. 9, 2009) 2009 Ohio 60, 2009 Ohio App. LEXIS 73, which found an arbitration clause enforceable.[5] The court stated, "The private attorney general and class action provisions of R.C. 1345.09(D) are procedural mechanisms that aid consumers in their prosecution of CSPA violations. They confer no additional substantive rights."[6] (*Id. at ¶* 34.) Presumably, Cintas reads this as indicating that Ohio law permits the waiver of the representative PAGA claim because it is not a substantive right, only a procedural mechanism. Neither *Hawkins* nor Ohio Revised Code section 1345.09, however, contains private attorney general provisions that are the equivalent of qui tam PAGA actions. Cintas offers no Ohio law as to whether qui tam actions are recognized in Ohio, and if so, whether they may be waived or are subject to arbitration. While Cintas has failed to show on appeal that Ohio law differs significantly from California law, Tarantino conceded as much below. "The application of Ohio law is therefore contrary

---

[5] The Ohio Supreme Court Rules for the Reporting of Opinions permits the citation of unreported decisions. "All opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published." (Ohio S.Ct. Rep. Op. Rule 3.4.)

[6] Although *Hawkins* refers to Ohio Revised Code section 1345.09(D), the relevant subdivision appears to be (E): "When a consumer commences an individual action for a declaratory judgment or an injunction or a class action under this section, the clerk of court shall immediately mail a copy of the complaint to the attorney general. Upon timely application, the attorney general may be permitted to intervene in any private action or appeal pending under this section. When a judgment under this section becomes final, the clerk of court shall mail a copy of the judgment including supporting opinions to the attorney general for inclusion in the public file maintained under division (A)(3) of section 1345.05 of the Revised Code." (Ohio Rev. Code Ann. § 1345.09, subd. (E).)

to the fundamental policy of California because application of Ohio law (which lacks a PAGA statute) operates as a waiver of Tarantino's representative PAGA action to enforce the California Labor Code."

Accordingly, in this case, where there is only a single representative PAGA cause of action and an arbitration agreement that the parties agree does not provide for arbitration of a representative claim, we accept the parties' premise that enforcing the arbitration agreement to require arbitration of Tarantino's individual PAGA claims would result in waiver of the representative PAGA claims. The parties further agree that result would be permissible under Ohio law, but not under California law. To determine whether the trial court erred in denying the motion to stay and the petition to compel arbitration, we must determine whether the law of Ohio or California applies.

III

*Choice of Law*

As noted *ante,* the employment agreement contains a choice of law provision that selects Ohio law as the governing law. Cintas contends this provision must be enforced.

"In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions. [¶] More specifically, Restatement section 187, subdivision (2) sets forth the following standards: 'The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the

13

absence of an effective choice of law by the parties.' " (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465, fns. omitted (*Nedlloyd*).)

Cintas's principal place of business is in Ohio. "This fact alone is sufficient to establish a 'substantial relationship' between [Ohio] and the parties as well as a 'reasonable basis' for a contractual provision requiring application of [Ohio] law." (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 258.)

The pivotal question is whether application of Ohio law would be contrary to a fundamental policy of California. (*Nedlloyd, supra,* 3 Cal.4th at p. 465.) "To be fundamental within the meaning of Restatement section 187, a policy must be a substantial one. (Rest., § 187, com. g, p. 568.)" (*Brack v. Omni Loan Co., Ltd*. (2008) 164 Cal.App.4th 1312, 1323 (*Brack*).)

At oral argument, Cintas asserted that applying Ohio law would not be contrary to the fundamental policy of California because PAGA provides only a procedural right, not a substantive right. Cintas did not raise this point in its opening brief. While it discussed the procedural nature of PAGA in its reply brief, it did not argue the procedural nature of PAGA precludes finding a fundamental right for choice of law purposes. We are not required to consider any point made for the first time at oral argument. (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6; *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 ["We do not consider arguments that are raised for the first time at oral argument"].) Moreover, Cintas failed to cite any legal authority that a procedural right cannot be a fundamental policy. (See *Aral v. EarthLink, Inc*. (2005) 134 Cal.App.4th 544, 564 [finding "the right of California to ensure that its citizens have a viable forum in which to recover minor amounts of money allegedly obtained in violation of the UCL" was a fundamental policy]; *ABF Capital Corp. v. Grove Properties Co*. (2005) 126 Cal.App.4th 204, 223 [finding the reciprocal attorney fee provision of Civ. Code § 1717 (characterized as a "procedural issue") was a fundamental policy of California].) We have not found any

14

such authority, nor do we discern a principled reason for making such a distinction between procedural and substantive rights in determining fundamental rights.

We conclude the rule set forth in *Iskanian* is a fundamental policy of California.

First, Tarantino brought suit to enforce the provisions of Labor Code section 226. " '[T]he public policy in favor of full and prompt payment of an employee's earned wages is fundamental and well-established' and the failure to timely pay wages injures not only the employee, but the public at large as well." (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1400.) Labor Code section 226 plays an important role in vindicating this fundamental public policy. (*Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1388.)

Second, "[t]he relative significance of a particular policy or statutory scheme can be determined by considering whether parties may, by agreement, avoid the policy or statutory requirement." (*Brack, supra,* 164 Cal.App.4th at p. 1323.) *Iskanian* held the parties may not waive the employee's right to bring to a PAGA action before the dispute arose. This no-waiver rule indicates the policy is significant and substantial.

Cintas argues the *Iskanian* rule is not a fundamental policy and Ohio law should apply because such law is not "immoral and contrary to the general interests of California citizens." In asserting this standard, Cintas relies on a pre-*Nedlloyd* case, *Wong v. Tenneco, Inc.* (1985) 39 Cal.3d 126, at pages 135-136. *Wong* is a comity case, deciding whether California should apply the law of a foreign sovereign, Mexico, to a dispute relating to farming operations there. Under the doctrine of comity, "the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there. [Citations.]" (*Id.* at p. 134.) *Wong* recognized the "public policy" exception to the comity doctrine. "The standard, however, is not simply that the law is contrary to our public policy, but that it is so offensive to our public policy as to be ' "prejudicial to recognized standards of morality and to the general interests of the citizens . . . .' " (*Id.* at p. 135.) Cintas contends this is the proper standard for determining whether a policy is

15

fundamental in the choice of law context. Cintas applies the wrong standard. As *Brack, supra*, 164 Cal.App.4th 1312 explains, a different, less stringent standard applies here. In the choice of law context, "the policy need not be as strong as is required when a state refuses to permit its courts to be used to prosecute a foreign cause of action. (Rest., § 187, com. g, p. 569.) In such cases, in which a state's obligations under the full faith and credit clause of the United States Constitution are implicated, the policy must involve " 'some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonweal.' " (Rest., § 90, com. c, p. 267.)" (*Brack,* at p. 1323.) Under *Nedlloyd*, the policy need only be "fundamental." (*Nedlloyd, supra,* 3 Cal.4th at p. 465.)

Finally, California has a materially greater interest than Ohio in the particular issue. (*Nedlloyd, supra,* 3 Cal.4th at p. 465.) Tarantino's suit involves enforcement of California's labor law as to California employees employed within California. Further, the action is a qui tam action, brought on behalf of the State, with the greater share of any penalties recovered going to the State.

The trial court did not err in applying California law.

IV

*Claim of Post-Dispute Waiver*

Cintas contends Tarantino freely and validly waived his right to bring a representative PAGA action. *Iskanian* recognized that "employees are free to choose whether or not to bring PAGA actions when they are *aware* of Labor Code violations." (*Iskanian, supra,* 59 Cal.4th at p. 383, emphasis added.) Cintas argues that Tarantino freely chose to waive his right to bring a representative PAGA action because he signed the employment agreement over a year after he began work, and in exchange for a pay raise. Cintas reasons that the alleged failures to provide accurate wage statements and to maintain proper records of hours worked arose "long before he signed the new employment agreement containing the arbitration agreement."

16

Even assuming that the alleged labor law violations occurred throughout Tarantino's employment, nothing in the record indicates when Tarantino became *aware* of them. The employment agreement cites as consideration that Cintas is increasing Tarantino's rate of compensation and agreeing to arbitrate certain claims. It does not mention a waiver of any disputed labor claims or the right to bring a representative PAGA action. That the agreement was signed *after* Tarantino's employment began is insufficient alone to show that there was an actual dispute at that time over the PAGA claims. In *Iskanian*, the employee signed the arbitration agreement with the waiver of class or representative claims nine months after he began employment. (*Iskanian, supra*, 59 Cal.4th at p. 360.) On those facts the Supreme Court did not find a valid post-dispute waiver, but instead found the waiver unenforceable. (*Id*. at p. 384.)

V

*Preemption by FAA*

Cintas contends the rule of *Iskanian* is preempted by the FAA. Our Supreme Court considered and rejected this contention in *Iskanian, supra,* 59 Cal.4th at pages 384-388. We are bound by the decisions of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Cintas contends the Supremacy Clause of the United States Constitution requires that we disregard the decision of the California Supreme Court because it is at odds with federal law. This point is not well taken. Cintas relies only on a number of federal district cases that were not published. We are not bound by these decisions. "In the absence of controlling United States Supreme Court decisional authority, we make an independent determination of federal law. [Citations.] Decisions of the lower federal courts are persuasive, but are not binding. [Citations.]" (*Boucher v. Alliance Title Company, Inc.* (2005) 127 Cal.App.4th 262, 268.) Moreover, a recent Ninth Circuit decision found that the FAA does not preempt the *Iskanian* rule. (*Sakkab v. Luxottica*

17

*Retail North America, Inc.* (9th Cir. 2015) 803 F.3d 425, 433-440.)  Federal law, therefore, is not at odds with California law on this issue.

## VI

### *Ruling Contrary to California Law*

Cintas contends the trial court's ruling is contrary to California law because "[i]t is not disputed that the arbitration agreement at issue meets the *Armendariz* test under California law."  Under the *Armendariz* test, an arbitration agreement is lawful if it " '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.' "  (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 102.)

An aggrieved employee's action under the PAGA functions as a substitute for an action brought by the government itself.  (*Arias v. Superior Court, supra,* 46 Cal.4th at p. 986.)  Requiring Tarantino to arbitrate his individual PAGA claim and thus waive his representative PAGA claim would not "provide[] for all the types of relief that would otherwise be available in court."  (*Armendariz, supra,* 24 Cal.4th at p. 102.)  If limited to his individual claims, Tarantino could not--as agent of the State--recover penalties for all of Cintas's violations of California's labor law, "penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code."  (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 502, fn. omitted, quoted with approval in *Iskanian, supra,* 59 Cal.4th at p. 384.)

Cintas has not shown that the trial court's ruling is contrary to California law.

## DISPOSITION

The judgment is affirmed.  Tarantino shall recover costs on appeal.  (See Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                /s/
                                             Duarte, J.


We concur:


    /s/
Hull, Acting P. J.


    /s/
Hoch, J.

19